602 S.E.2d 108

**Charlotte O'Braitis LAUGHON, Appellant,**

**v.**

**Catheryne Ruth O'BRAITIS, Respondent.**

No. 3858.

Court of Appeals of South Carolina.

Heard June 8, 2004.

Decided Aug. 16, 2004.

Rehearing Denied Sept. 22, 2004.

522

Clinch H. Belser, Jr. and Michael J. Polk, both of Columbia, for Appellant.

Demetri K. Koutrakos, of Columbia, for Respondent.

HEARN, C.J.:

Charlotte O'Braitis brought this action seeking the partition of real property and an accounting for rents and profits against her sister, Catheryne Ruth O'Braitis, alleging Catheryne ousted her from a piece of real property the two parties own. Charlotte appeals the trial court's order granting the partition but denying her request for expenses and rents caused by Catheryne's alleged ouster. We affirm.

## FACTS

Charlotte and Catheryne's father passed away on April 19, 1997, and left his home to his four children in equal shares. Two of the siblings gave their share of the property to Catheryne, who had lived in the home assisting her father since 1983. Charlotte, who resides in California, retained her one-quarter share of the property.

Upon learning of her father's death, Charlotte and her domestic partner, Dr. Weissman, visited the subject property for the first time since 1983. The day after her father's funeral, Charlotte and Dr. Weissman began going through the home in order to find Charlotte's personal belongings. While they attempted to find her things, Charlotte testified that her siblings hovered over her and that her brother became verbally abusive and confrontational. Because of her brother's behavior, Charlotte called the sheriff's office. The officer, acting on his own volition and without any instruction from Catheryne, ordered Charlotte and Dr. Weissman off of the property and issued a trespassing warrant under which Charlotte and Dr. Weissman were not allowed on the property for six months.

Approximately one year later, Charlotte and Dr. Weissman visited the property for the purpose of reviewing personal property of her father's estate. Charlotte testified that Catheryne did not welcome her on the property; however, the evidence shows that Catheryne did not deny Charlotte access to the property.[1]

---

1. Certain incidents did occur, however, which made Charlotte feel threatened. For instance, Charlotte and Catheryne's brother "goose-stepped" around the outside of the house with a pellet gun slung over

In September 1998, Charlotte and Dr. Weissman returned to the property again for the purpose of reviewing personal property of the estate. During this visit, Catheryne hired a Richland County police officer to keep things under control. The officer testified that Charlotte walked into the house without knocking and went through the personal property without supervision.

In April 1999, Charlotte filed an action against her siblings in probate court, seeking an accounting, termination of the appointment of the personal representative, and other relief. In the probate action, Charlotte alleged Catheryne interfered with and obstructed her right to enter the subject property and sought to recoup money she spent on attorney's fees and other expenses incurred during the probate of her father's estate. The parties later entered into an agreement pursuant to section 62–3–912 of the South Carolina code, and the probate court action was then dismissed with prejudice on June 1, 2000, pursuant to an order of dismissal to which all parties consented.

On August 4, 2000, Charlotte brought this action for a partition and an accounting of rents and profits based on Catheryne's ouster of her from the property. Catheryne asserted counterclaims for partition and accounting and alleged Charlotte's claims were barred by *res judicata*. The case was referred to the master-in-equity. The master issued an order granting partition, denying compensation for ouster, and allowing Catheryne to purchase Charlotte's portion of the property for the net price (after offsets) of $2,264.31. Charlotte filed a motion to reconsider, which the master denied. This appeal followed.

## STANDARD OF REVIEW

A partition action, as well as an action for accounting, is an action in equity. In an appeal from an equitable action, this court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence. *Doe v. Clark*, 318 S.C. 274, 276, 457 S.E.2d 336, 337 (1995). However, this broad scope of review does not require this

---

his shoulder and a Nazi flag on his back in front of Dr. Weissman, who is Jewish.

court to disregard the findings at trial or ignore the fact that the trial judge was in a better position to assess the credibility of the witnesses. *Dorchester County Dep't of Soc. Servs. v. Miller,* 324 S.C. 445, 452, 477 S.E.2d 476, 480 (Ct.App.1996).

## LAW/ANALYSIS

### I. Ouster

█ Charlotte first argues the master erred in finding that Catheryne was not obligated to pay the expenses she incurred and the rent that she lost during the time she was allegedly ousted from the property. We disagree.

██ " 'Ouster' is the actual turning out or keeping excluded a party entitled to possession of any real property." *Freeman v. Freeman,* 323 S.C. 95, 99, 473 S.E.2d 467, 470 (Ct.App. 1996). "By actual ouster is not meant a physical eviction, but a possession attended with such circumstances as to evince a claim of exclusive right and title and a denial of the right of the other tenants to participate in the profits." *Woods v. Bivens,* 292 S.C. 76, 80, 354 S.E.2d 909, 912 (1987). *Freeman* provides:

> The acts relied upon to establish an ouster must be of an unequivocal nature, and so distinctly hostile to the rights of the other cotenants that the intention to disseize is clear and unmistakable. Only in rare, extreme cases will the ouster by one cotenant of other cotenants be implied from exclusive possession and dealings with the property, such as collection of rents and improvement of the property.

323 S.C. at 99, 473 S.E.2d at 470 (citation omitted).

Charlotte argues that Catheryne ousted her from the property by (1) refusing to give her a key to the property;[2] (2) not allowing her unfettered access to the property; and (3) acquiescing in the trespass warrant issued by the police officer. Charlotte contends these actions closely resemble those of the defendant in *Parker v. Shecut,* 349 S.C. 226, 562 S.E.2d 620

---

2. Charlotte claims she repeatedly requested a key to the house after her father's death in 1997, but Catheryne never gave her one. Catheryne explained that she did not give Charlotte a key because the estate had not yet been settled and every time Charlotte was in the house something was broken.

(2002). In *Parker*, a sister brought suit against her brother alleging he ousted her from a beach house they inherited jointly from their mother. The supreme court found an ouster had occurred based on evidence that the brother changed the locks to the house, refused to give his sister a working key, and otherwise denied his sister access to the property. *Id.* at 230–31, 562 S.E.2d at 623.

We find the present case differs significantly from *Parker*. It is uncontested that Catheryne allowed Charlotte access to the property every time she visited. In fact, on all three of Charlotte's visits to the property, she and Dr. Weissman walked freely through the house, looking at and going through personal property. According to the police officer, when Charlotte and Dr. Weissman arrived for the September 1998 visit, "[t]hey came to the front door, just walked straight on in, no knock at all, whatsoever." The officer also stated they "went around the house by themselves" and "were going through every bit of the property." This is hardly a denial of access to the property.

Furthermore, any acquiescence by Catheryne in the trespass warrant of April 1997 is not enough to support a finding of ouster. It is important to note that Charlotte, not Catheryne, was the one who called an officer to the scene when the altercation ensued between Charlotte and her siblings. Because Charlotte enlisted the help of an outside party to settle the dispute, she cannot now attribute the effect of the trespass warrant to Catheryne. Based on all the above, we find Catheryne's actions toward Charlotte do not amount to ouster.

Not only do we hold no ouster occurred, we also hold Charlotte's claim for an accounting is barred by *res judicata*, or more specifically, issue preclusion. Under the doctrine of issue preclusion, if an issue of fact or law was actually litigated and determined and necessary to a valid and final judgment, the determination is conclusive in a subsequent action on that claim or a different claim. *Carman v. S.C. Alcoholic Beverage Control Comm'n*, 317 S.C. 1, 6, 451 S.E.2d 383, 386 (1994).

Here, Charlotte filed a petition in probate court seeking an accounting for the attorney's fees and expenses she incurred while traveling between California and South Carolina. Charlotte also alleged in the probate court action that she was

entitled to rent from Catheryne because Catheryne interfered with her right to enter the property. Thus, in the probate court action, just as in the present action, Charlotte sought the expenses she incurred and the rent she lost during the time she was allegedly denied access to the property. In fact, Charlotte even admitted while testifying in the present action that she had filed a complaint against Catheryne in probate court raising the same issues that she raises in this action.

 The probate court dismissed the action with prejudice pursuant to an order of dismissal to which the parties consented. A dismissal with prejudice acts as an adjudication on the merits and therefore precludes subsequent litigation just as if the action had been tried to a final adjudication. *Jones v. City of Folly Beach*, 326 S.C. 360, 366, 483 S.E.2d 770, 773 (Ct.App. 1997). In a subsequent action involving the same subject matter, the dismissal finally settles all matters litigated in the earlier proceedings, and all matters which might have been litigated therein. *Nunnery v. Brantley Constr. Co*, 289 S.C. 205, 209, 345 S.E.2d 740, 743 (Ct.App.1986). Because Charlotte raised the same issue in the probate action and that issue was necessary to and determined in an adjudication on the merits, she is precluded from raising the issue again in this action.

 Charlotte attempts to make a distinction between the issues raised to the probate court and the trial court by arguing that, in the probate court action, she sought access to the subject property *for the purpose of inspecting the personal property only because that is the only relief available in Probate Court.* We find this argument unconvincing.

It is a fundamental principle of jurisprudence that material facts or questions which were directly in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become *res judicata* and may not again be litigated in a subsequent action between the same parties or their privies, *regardless of the form that the issue may take in the subsequent action.*

. . .

The rule will also apply *even though the subsequent action is upon a different cause of action, and involves a different*

*subject matter, claim, or demand, than the earlier action.* In such cases, it is likewise immaterial that the two actions have a *different scope,* or are based on *different grounds,* or are tried on *different theories,* or are instituted for different purposes, and *seek different relief.*

46 Am. Jur. 2d *Judgments* § 539 (1994) (emphasis added).

Therefore, Charlotte's argument that, in the probate action, she only sought access to the property for the purpose of inspecting personal property is not enough to allow her present claim for ouster to go forward. In addition, this distinction fails because Charlotte testified that all her visits to the property were for the purpose of inspecting personal property. She cannot now claim that she wanted access to the property for any other reason than to inspect the personal property of her father's estate. It is clear that she raised the same issue in both the probate court and the trial court. Therefore, Charlotte's claim that she is due an accounting based on Catheryne's ouster is barred by *res judicata.*

## II. Trial Court's Calculation of the Net Price for Charlotte's Share of the Property

 Charlotte next argues the trial court incorrectly calculated the net price Catheryne should pay for Charlotte's share of the property by crediting Catheryne for the amount the property increased in value due to Catheryne's improvements to the property. We find the trial court correctly determined the net price.

Catheryne spent approximately $9,859.80 in making improvements to the property, such as renovating the living room, dining room, and the kitchen. Catheryne testified that due to the improvements, the property increased in value from $53,000 to $55,000. Charlotte argues Catheryne should not receive credit for the $2,000 increase because Catheryne made these improvements unilaterally, and thus, at her own risk. It is immaterial that Catheryne made these improvements without Charlotte's consent. As our court explained in *Ackerman v. Heard:*

The general rule is that a joint tenant who, at his own expense, places permanent improvements upon the common property is entitled in a partition suit to compensation for the improvements whether his cotenants assented thereto

or not. Compensation is allowed not as a matter of legal right but purely from the desire of a court of equity to do justice and to prevent the one tenant from becoming enriched at the expense of another. In the absence of consent, which we did not have in the case before us, the amount of compensation is estimated by and *limited to* the amount by which the value of the common property has been enhanced.

287 S.C. 626, 628–29, 340 S.E.2d 560, 562 (Ct.App.1986) (emphasis in original). Because the improvements to the property increased the value of the property by $2,000, the trial court properly gave Catheryne $2,000 in credit. While we agree with the trial judge's decision to reimburse Catheryne for the improvements to the property, we point out a clarification in the amount Catheryne must pay Charlotte. The trial judge's order misstated the amount of increase in value to be $2,500, but his later order denying Charlotte's motion to reconsider corrected the error. However, the trial court did not specifically correct the net price to be paid to Catheryne based on an increase in value of $2,000. To clarify this issue for the parties, we find that Catheryne must pay Charlotte $2,764.31 for her share of the property based on an increase in the fair market value of the property of $2,000, and taking into consideration the trial court's calculations for taxes, insurance, and attorney's fees.

### III. Attorney's Fees

■ Charlotte claims the trial court erred in awarding attorney's fees to Catheryne because Charlotte was required to bring this action based on Catheryne's ouster. We disagree.

■ The determination of whether to award attorney's fees in partition actions rests within the sound discretion of the trial court. *S & W Corp. of Inman v. Wells*, 283 S.C. 218, 220, 321 S.E.2d 183, 185 (Ct.App.1984). The trial court may "fix attorneys' fees in all partition proceedings and, as may be equitable, assess such fees against any or all of the parties in interest." S.C.Code Ann. § 15–61–110 (Supp.1976).

Although Charlotte argues she was required to bring this partition action because of Catheryne's ouster, as discussed

530

above, no ouster occurred. Moreover, Catheryne was forced to defend allegations that were previously raised and dismissed with prejudice in the probate court action. Based on the above, and giving deference to the trial court, we find the award of attorney's fees was proper.

## CONCLUSION

For the foregoing reasons, the decision of the trial court is **AFFIRMED.**

STILWELL, J. and CURETON, Acting J., concur.