HEARD APRIL TERM, 1871.

## CURETON *vs.* GILMORE.

P made advances to G in the Spring on the faith of G's verbal promise to give to P a lien on his crop of the year to secure the advances. G died suddenly in June, without having given the lien. On bill to marshal the assets of G's estate, which was insolvent, *Held,*. That P was not entitled to payment out of the proceeds of the crop as a lien creditor.

A party making advances to one engaged in the cultivation of the soil must comply strictly with the conditions of the Act "to secure advancements for agricultural purposes," or he will acquire no lien on the crop.

Where a party has been guilty of gross negligence, specific performance will not be decreed in his favor.

BEFORE THOMAS, J., AT CHESTER, NOVEMBER TERM, 1870.

This was a bill to marshal the assets of the estate of W. T. Gilmore, who died insolvent in June, 1867.

James Pagan presented a claim against the estate amounting to $914.23 for agricultural supplies furnished Gilmore in the Spring of 1867, to enable him to make a crop, and claimed payment out of the proceeds of Gilmore's crop of that year, as a lien creditor.

The facts were as follows : Pagan was a merchant of the town of Chester, and in the year 1867 he did a large business in making advances to planters secured by liens on their crops. Gilmore was a planter living on his plantation about six miles from the town of Chester, and engaged in the cultivation of the soil. In the Spring of 1867, Pagan made advances to Gilmore to the amount of his claim, on the verbal promise of the latter to secure the advances by a lien on his crop of the year to the extent of $1,500. The matter of the lien was several times spoken of by the parties, Gilmore always promising to give it, and during the time he was receiving the supplies he went to Pagan to make out the papers, but Pagan was too busy to do so. The lien was not taken, and Gilmore died suddenly on the 7th June, 1867. His crop of that year realized over $3,000.

The matter was referred to a referee, who reported in favor of Pagan's right to be paid as a lien creditor. Some of the specialty creditors of Gilmore excepted to the report, and his Honor the presiding Judge sustained the exception.

Pagan appealed to this Court, on the grounds:

1. Because, from the proof, it was clear that Pagan had advanced the supplies to Gilmore upon the faith of his express promise to give an agricultural lien on the crop then being made by Gilmore, and that Gilmore's sudden death alone prevented the execution of the lien; and thus having performed fully his part of the contract, Pagan has an equitable lien on the property promised to be secured to him, and should have been paid out of the proceeds of the crop which, without those advances,. could not have been made.

2. Because His Honor the presiding Judge, sitting as a Judge in

Equity, erred in not being guided by that important rule of Courts of Equity, in considering what ought to have been done as done; and as it was not controverted that the creditor having done his part, could, in equity, have compelled a specific performance from the debtor, if alive, there was no sufficient reason for the adoption of a different rule, now that he is dead; the assumption on the part of the presiding Judge that the creditor was himself in fault, not being founded in fact or sustained by the testimony.

*Brawley,* for appellant:

A Court of Equity looks upon a thing agreed to be done, as actually performed, and considers that the same shall relate back to the time when it ought to have been done originally.—3 Blackstone, 439; Fonblanque Eq., 40, 41; 1. Sug. on Vend., 171.

Where the Court is satisfied that a claim is just, fair, and reasonable, and the contract equal in all its parts, and founded on an adequate consideration, it is as much a matter of course to decree specific performance, as it is at law to give damages; equity not regarding the outward form, but the inward substance and essence of the matter.—Fon. Eq., 31, 40, 41; 3 Cowen, 445, 505; 2 Stor. Eq., § 715.

The jurisdiction of a Court of Equity to decree a specific performance of a contract is not dependent upon or affected by the form or character of the instrument which was to have been, or is the evidence of the agreement; and *if the Court is satisfied that it was* the intention of the parties, upon a good or valuable consideration, to contract a perfect and binding obligation for a specific object, it will lend its aid to carry into effect the agreement of the parties, so far as the same is consistent with natural justice.—2 Story Eq., §§ 714, 715; Fonb., Bk. 1, Ch. 1, § 7.

Where a parol agreement is so far executed as to entitle either of the parties to require a specific execution of it, it will be binding on the representatives of the other party, in case of his death, to the same extent as he himself was bound by it; the fact of the existence of creditors of the deceased makes no difference, for it is a general rule, that whenever a right in equity attaches against a person, that equitable right binds all persons claiming under or against that person who had not special liens on any of the property—general creditors being in all cases bound by a particular equity.—*Reid* vs. *Gaillard,* DeS., 2, 552; *Bates* vs. *Dandy,* 2 Atk.,

207; Sugd. on Vend., Ch. II, § 3, p. *130; *Grant* vs. *Craigmiles*, 1 Bibb, 203; Powell on Mortg., pp. 459 and 460.

If the contract is binding on the parties the legal effect is the same, whether it is in writing or by parol.—*Massey* vs. *McIlwaine*, 2 Hill Ch., 428; *Frederick* vs. *Frederick*, 1 P. Wms., 710; Batten on Specific Performances, pp. 329, 336, 338, 369; *Burn* vs. *Burn*, 3 Ves., 576.

*McLure, Brice,* contra:

The specialty creditors of W. T. Gilmore, appellees, resist the reversal of the Circuit decree:

*First.* Because a lien on Gilmore's crops did not inure to the appellant, Pagan, by reason of his non-compliance with the requirements of the Act "to secure advancements for agricultural purposes." These requirements are conditions precedent to a lien; and appellant not having a lien under the Act, equity will not make and establish one for him.—13 Stat., 380, Act of 1866; *Martin* vs. *Price*, 2 Rich. Eq., 441.

*Second.* Liens, mortgages, &c., whether legal or equitable, apply only to property *in esse.* The Act "to secure advancements for agricultural purposes," provides for a lien on property not *in esse*, but to be produced—the lien is purely statutory, and the requirements of the Act must be strictly complied with.—*Kelly* vs. *Hotel Co. et al.*, McMul. Eq., 431.

*Third.* Equity will not consider "that to have been done which ought to have been done," and thereby cure the laches and assist the negligence of the party asking its aid.—*Thompson* vs. *Dulles*, 5 Rich. Eq., 391; *Lloyd* vs. *Collett*, 4 Bro., 469; *Fordyce* vs. *Ford*, 4 Bro., 494; *Smith* vs. *Clay*, Amb., 645.

*Fourth.* By A. A. 1789, Sec. XXIII, 5 Stat., 111—Where any person shall die after the first day of March "the crop shall be assets in the executors' and administrators' hands, subject to debts, &c." Sec. XXVI of the same statute prescribes the order for the payment of debts. To uphold secret liens would be practically to set aside this statute, and open a door for fraud and illegality, and defeat the just claims of creditors.

Sep. 4, 1871. The opinion of the Court was delivered by

WRIGHT, A. J. Some time during the month of March, 1867, one James Pagan, a commission merchant, doing a large business in making advances to planters, secured by agricultural liens, made advances to one W. T. Gilmore, who was a planter, upon the faith

of the said Gilmore, promising to give a lien upon his then growing crop. Gilmore died suddenly, in June, of the same year, without having given the said Pagan a lien on the crop as agreed.

Administration on his estate was granted to complainant, and bill filed to marshal the assets of the estate, which was insolvent. The claim of the said Pagan was allowed by the Commissioner, before whom it was established, and he (Pagan) reported as being a creditor standing "upon a high equitable ground." To this report exception was taken, which was sustained by the decree of the Circuit Judge, from which decree the said James Pagan appeals.

There is no dispute as to Pagan furnishing Gilmore with that which was requisite to raise the crop, and that a good crop was raised that year. These facts are well established by the testimony. It is clear that Pagan had no lien upon the crop of the deceased, as a statute was made to create an agricultural lien, and no lien could be created without strictly complying with that Act, which will be found in Vol. 13, p. 380, and reads as follows: "That if any person or persons shall make any advance or advances, either in money or supplies, to any person or persons who are engaged, or are about to engage in the cultivation of the soil, the person or persons so making such an advance or advances, shall be entitled to a lien on the crop, which may be made during the year, upon the land in the cultivation of which the advances so made have been expended, in preference of all other liens existing or otherwise, to the extent of such advance or advances: provided, an agreement, in writing, shall be entered into before any such advance is made to this effect, in which shall be specified the amount to be advanced, or in which a limit shall be fixed beyond which the advances, if made from time to time during the year, shall not go, which agreement shall be recorded in the office of the Register of Mesne Conveyances for the District, in which the person to whom the advances are made resides, within thirty days from its date."

By this Act it is perceived that there were certain duties to be performed by the party to make the advance or advances, as well as the other party, who was to receive the advance or advances, previous to any money or supplies being delivered to the party of the second part. This Act is plain and complete for the protection of all parties to the contracts created by it. Pagan, according to his own testimony, began to make advances to Gilmore in February. The Act provides that " an agreement in writing shall be entered into before any such advance is made." Those who violate

the law must expect to abide the consequences. When a person comes into a Court of Equity to ask the Court to compel specific performance of a contract, he must first show that all has been done that could be done on his part to comply with the law; because where there is negligence and neglect of duty, as is plainly shown in this case, and that is left undone which ought to have been done by him who asks the aid of the Court, equity will grant no relief. It is very clear to this Court that it was in consequence of the laches of the appellant that he did not have a lien upon the crop of the deceased; and it is a well settled rule of equity that where there is gross negligence, the Court will not lend its aid to complete the contract, for to do so would be to encourage and foster negligence in parties making contracts. In Fonblanque's Treatise on Equity, 1st Book, p. 391, he says: " He, therefore, who demands the execution of an agreement, ought to show that there has been no default in him in performing all that was to be done on his part; for, if either he will not, or through his own negligence cannot, perform the whole on his side, he has no title in equity to the performance of the other party, since such performance could not be mutual. And, upon this reasoning, it is that where a man has trifled or shown a backwardness in performing his part of the contract, equity will not decree a specific performance in his favor, especially if circumstances are altered." The same doctrine is fully sustained by our own Court in the case of *Thompson* vs. *Dulles*, 5 Rich. Eq., 391.

It is ordered that the decree be affirmed, and the appeal dismissed.

*Willard*, A. J., concurred.

*Moses*, C. J., absent at the hearing.