679 S.E.2d 527

**C. Steve CLARDY and Michael S. Clardy, Respondents,**

v.

**Jack BODOLOSKY and United Land–
Magnolia, LLC, Appellants.**

**No. 4540.**

Court of Appeals of South Carolina.

Heard Feb. 4, 2009.

Decided May 5, 2009.

420

Fred B. Newby and C. Leigh Andrew, both of Myrtle Beach, for Appellants.

David B. Miller and Robert S. Shelton, both of Myrtle Beach, for Respondents.

LOCKEMY, J.:

In this breach of contract action, Jack Bodolosky and United Land–Magnolia, LLC (collectively Bodolosky) appeal the trial court's judgment in favor of C. Steve Clardy and Michael S. Clardy. Specifically, Bodolosky argues the trial court erred by ordering him to carry out the terms of his real estate contract with the Clardys and deliver title of real property to them. Bodolosky maintains there was no "meeting of the minds" between the parties to warrant enforcement of the contract. Finally, Bodolosky contends the trial court erred in awarding attorney's fees to the Clardys. We affirm in part and reverse in part.

## FACTS/PROCEDURAL BACKGROUND

This appeal involves a real estate contract dispute over the Southerner Motel and the Tradewinds Motel (the Motels) in Myrtle Beach. Prior to the present action, Bodolosky was under contract to purchase the Motels from Johnny Elvington and Landis Elvington. Bodolosky had not closed on his contract when Steve and Jack Clardy approached him about purchasing the Motels. The Clardys owned the Boardwalk Hotel, which is adjacent to the Motels at issue.

The Clardys received a contract from Bodolosky for the purchase of the Motels for $2.4 million on April 28, 2005.

Under the terms of the contract, the Clardys had to pay $150,000 in nonrefundable earnest money and negotiate other contract terms with Scott Long, Bodolosky's attorney. The offer to purchase expired on May 2, 2005; however, Bodolosky extended the deadline to 5:00 p.m., May 12, 2005. Once the extended deadline expired, the Clardys received a letter which indicated Bodolosky had withdrawn the contract.

Mike Clardy then contacted Bodolosky directly and expressed his continued interest in purchasing the Motels. Bodolosky indicated he would go through with the sale but increased the purchase price to $2.5 million and increased the earnest money to $200,000. Additionally, the Clardys had to accept the new offer and send in earnest money by 5:00 p.m. on May 18, 2005. According to Mike Clardy's testimony, Bodolosky indicated he would make the corrections and initial them on the existing contract. Bodolosky left the amended contract at Long's office. Subsequently, Steve Clardy signed the amended contract at Long's office on May 18, 2005. Pursuant to the amended contract terms, the Clardys paid $200,000 in earnest money by writing a check to Bodolosky's attorney, rather than Bodolosky. According to Michael Clardy's testimony, Long instructed the Clardys to make the check out to his trust account, and the Clardys issued a check to "J. Scott Long Trust Account."

After the Clardys tendered the earnest money, Bodolosky negotiated and entered into an Operating Agreement forming United Land–Magnolia, LLC (Land–Magnolia). Land–Magnolia took title to the Motels, and Bodolosky testified he formed Land–Magnolia for the express purpose of purchasing and developing the Motels he had just sold to the Clardys. Accordingly, he attempted to rescind his contract with the Clardys. Thus, on June 2, 2005, Bodolosky sent Michael Clardy a letter claiming no purchase agreement was in effect between the parties, and he had instructed his attorney to return the earnest money. Since his attempt to rescind the contract, Land–Magnolia abandoned plans to develop the property and sold the property to Cypress Bay, LLC.

The Clardys filed suit against Bodolosky seeking declaratory judgment, specific performance, breach of contract, and breach of contract accompanied by a fraudulent act. Addition-

ally, the Clardys sought attorney's fees and costs. In his answer, Bodolosky counterclaimed for malicious prosecution and abuse of process; however, upon consent of the parties, the trial court dismissed the counterclaims.

The trial court found the Clardys complied with the terms of the real estate contract "as they understood them to be" and "simply performed as they were instructed." Thus, the trial court held there was a meeting of the minds between the parties, and the Clardys performed their pre-closing obligations. Additionally, the trial court granted the Clardys' request for specific performance and ordered Bodolosky to deliver title of the real property to the Clardys. Finally, the trial court found the Clardys were entitled to $42,849.42 in attorney's fees and costs.

After the trial, Bodolosky filed a motion for reconsideration pursuant to Rule 59(e), SCRCP, where he asked the trial court to reconsider its ruling in favor of the Clardys and instead find no contract existed between the parties and find that there had not been a meeting of the minds. In his motion, Bodolosky requested the trial court specifically rule on whether the handwritten provisions in the agreement were controlling over the pre-printed provisions. Additionally, Bodolosky asked the trial court to reconsider its ruling awarding attorney's fees and argued the amount of attorney's fees awarded was unreasonable. The trial court denied Bodolosky's motion to reconsider but, in its order, specifically ruled the hand-written provisions in the agreement were controlling. This appeal followed.

## STANDARD OF REVIEW

An action for specific performance is one in equity. *Campbell v. Carr*, 361 S.C. 258, 262–63, 603 S.E.2d 625, 627 (Ct.App.2004). "In reviewing a proceeding in equity, this court may find facts based on its own view of the preponderance of the evidence." *Greer v. Spartanburg Technical College*, 338 S.C. 76, 79, 524 S.E.2d 856, 858 (Ct.App.1999). "This broad scope of review does not require this court to ignore the findings below when the trial court was in a better position to evaluate the credibility of the witnesses." *Id.* "An action to construe a contract is an action at law." *McGill v. Moore*, 381

S.C. 179, 185, 672 S.E.2d 571, 574 (2009). "A legal question in an equity case receives review as in law." *Sloan v. Greenville County,* 356 S.C. 531, 546, 590 S.E.2d 338, 346 (Ct.App.2003). "Questions of law may be decided with no particular deference to the trial court." *S.C. Dept. of Transp. v. M & T Enters. of Mt. Pleasant, LLC,* 379 S.C. 645, 654, 667 S.E.2d 7, 12 (Ct.App.2008). "This court may correct errors of law in both legal and equity actions." *Id.*

## LAW/ANALYSIS

### I. Meeting of the Minds

Bodolosky contends the trial court erred in finding there was a meeting of the minds and finding the contract was enforceable as a matter of law. We disagree.

"South Carolina common law requires that, in order to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to all essential and material terms of the agreement." *Player v. Chandler,* 299 S.C. 101, 105, 382 S.E.2d 891, 893 (1989) (emphasis in original); *see also Potomac Leasing Co. v. Otts Mkt., Inc.,* 292 S.C. 603, 606, 358 S.E.2d 154, 156 (Ct.App.1987) ("It is well settled in South Carolina that in order for there to be a binding contract between parties, there must be a mutual manifestation of assent to the terms."). "The necessary elements of a contract are an offer, acceptance, and valuable consideration." *Roberts v. Gaskins,* 327 S.C. 478, 483, 486 S.E.2d 771, 773 (Ct.App.1997). In *Player v. Chandler,* the South Carolina Supreme Court asserted:

> The "meeting of minds" required to make a contract is not based on secret purpose or intention on the part of one of the parties, stored away in his mind and not brought to the attention of the other party, but must be based on purpose and intention which has been made known or which, from all the circumstances, should be known.

299 S.C. at 105, 382 S.E.2d at 894.

Here, the trial court found there was a clear meeting of the minds between the parties to the contract. Further, the trial court held the Clardys complied with the requirements of the contract as they understood them to be and simply performed

as they were instructed. We believe there was a meeting of the minds between Bodolosky and the Clardys regarding the material terms of the contract. Furthermore, evidence demonstrates the necessary terms of the contract existed: Bodolosky made and initialed a new offer; the Clardys accepted the new offer; and the Clardys provided $200,000 in earnest money as valuable consideration. If writing an earnest money check directly to Bodolosky was material to him, Bodolosky should have made it known to the Clardys. *Id.* at 105, 382 S.E.2d at 894 (stating the "meeting of minds" requirement is not based on secret purpose or intention on the part of one of the parties). Accordingly, we affirm the trial court's determination that a meeting of the minds occurred between the parties.

## II. Specific Performance

Bodolosky next argues the trial court erred in finding the Clardys were entitled to specific performance because the contract was clear on its face. Specifically, Bodolosky contends the contract required the Clardys pay him directly rather than write a check to his attorney's trust account because the parties did not intend to use an escrow agent. Additionally, Bodolosky maintains the handwritten provisions in the contract took precedence over the pre-printed provisions. We disagree.

The trial court should only grant specific performance if there is no adequate remedy at law and specific enforcement of the contract is equitable between the parties. *Ingram v. Kasey's Assocs.*, 340 S.C. 98, 105–06, 531 S.E.2d 287, 291 (2000). The *Ingram* court stated:

In order to compel specific performance, a court of equity must find: (1) there is clear evidence of a valid agreement; (2) the agreement had been partly carried into execution on one side with the approbation of the other; and (3) the party who comes to compel performance has performed his or her part, or has been and remains able and willing to perform his or her part of the contract.

*Id.* at 106, 531 S.E.2d at 291. "Mere inadequacy of consideration is not a ground for refusing the remedy of specific performance; in order to be a defense, the inadequacy must

either be accompanied by other inequitable incidents, or must be so gross as to show fraud." *Campbell v. Carr*, 361 S.C. 258, 264, 603 S.E.2d 625, 628 (Ct.App.2004) (citing *Ingram*, 340 S.C. at 106, 531 S.E.2d at 291).

"The doctrine of substantial performance was conceived for the case where a plaintiff's partial performance has already given to a defendant substantially all that he bargained for and is of such a nature that it cannot be returned." *Coastal Seafood Co., Inc. v. Alcoa S.C., Inc.*, 298 S.C. 466, 467–68, 381 S.E.2d 502, 503 (Ct.App.1989) (citing *Diamond Swimming Pool Co. v. Broome*, 252 S.C. 379, 384, 166 S.E.2d 308, 311 (1969)). In *Elliott v. Snyder*, the seller under an installment land sale contract brought an action for rescission and cancellation thereof. 246 S.C. 186, 143 S.E.2d 374 (1965). The buyer tendered an installment check which was returned marked "drawn against uncollected funds." *Id.* at 190, 143 S.E.2d at 376. The court held the seller was on notice that the check was not worthless but that the funds drawn upon had not been collected at that time. *Id.* at 191, 143 S.E.2d at 376. Further, the court found there was substantial compliance with the terms of the contract sufficient to prevent forfeiture, and the seller was not entitled to rescind. *Id.*

We find the Clardys satisfied the elements of the *Ingram* test: there is evidence of a valid agreement, the Clardys performed their part of the contract with Bodolosky's consent, and the Clardys remain able and willing to buy the real estate. Additionally, the Clardys substantially performed their part of the contract and gave Bodolosky substantially all that he bargained for even if we assume the contract required the Clardys write the earnest money check directly to Bodolosky rather than to Long's trust account. Furthermore, the express provisions of the contract do not make strict compliance essential; therefore, substantial compliance is sufficient. *See Coastal Seafood*, 298 S.C. at 468, 381 S.E.2d at 503 ("Where a contract, by its express provisions, makes strict compliance essential, substantial performance is not sufficient.").

Additionally, the trial court found Mike Clardy's testimony provided "the most credible explanation of the events surrounding the execution and delivery of the earnest money

check." Mike Clardy testified he called Long to find out how to make out the earnest money check, and Long instructed him to make the earnest money check out to Long's trust account. Under our standard of review, this court can give deference to the trial court's credibility determinations. *See Greer v. Spartanburg Technical College*, 338 S.C. 76, 79, 524 S.E.2d 856, 858 (Ct.App.1999) ("This broad scope of review does not require this court to ignore the findings below when the trial court was in a better position to evaluate the credibility of the witnesses."). Therefore, we affirm the trial court's decision to grant the Clardys specific performance based on the *Ingram* test, the Clardys' substantial compliance, and the trial court's credibility determination.

## III.   Attorney's Fees

### A.   Decision to Award and Amount

Finally, Bodolosky alleges the trial court erred in awarding attorney's fees and in finding the attorney's fees were reasonable as a matter of law. We disagree.

A party cannot recover attorney's fees unless authorized by contract or statute. *Jackson v. Speed*, 326 S.C. 289, 307, 486 S.E.2d 750, 759 (1997); *see also Hegler v. Gulf Ins. Co.*, 270 S.C. 548, 549, 243 S.E.2d 443, 444 (1978) ("As a general rule, attorney's fees are not recoverable unless authorized by contract or statute."). The *Jackson* court asserted: "[C]ourt[s] should consider the following six factors when determining a reasonable attorney's fee: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services." *Id.* at 308, 486 S.E.2d at 760. "On appeal, an award for attorney's fees will be affirmed so long as sufficient evidence in the record supports each factor." *Id.*

Here, no statute authorizes an award of attorney's fees; therefore, we must look to the contract for such remedy. *See Hegler*, 270 S.C. at 549, 243 S.E.2d at 444 ("No right to recover is here asserted under any statute. Appellant then must recover, if at all, upon some contractual right."). Attorney's fees were authorized under the default clause of the

contract. Specifically, the default clause provides: "If Buyer or Seller fails to perform any covenant of this Agreement, the other may elect to seek any remedy provided by law, including but not limited to attorney fees and actual costs incurred ... or terminate this Agreement with a five day written notice."

The trial court awarded the Clardys attorney's fees and costs for having to initiate suit in order to carry out the terms of their contract. Further, the trial court took the six factors of *Jackson* into account, and noting the current action was for specific performance, considered: 1) the nature, extent, and difficulty involved in the action; 2) the reasonableness of attorney's fees and costs; 3) affidavits outlining specific hours spent prosecuting the case; and 4) the customary hourly rates charged in the area. Additionally, the trial court found the attorney's fees sought were well within the custom of our practice area and reasonable under the specific facts of the present matter. Finally, the trial court noted the professional standing of the Clardys' counsel, and found counsel's experience in similar matters was influential in securing the Clardys' beneficial results. Accordingly, the trial court properly considered the six factors set forth in *Jackson* in awarding $42,849.42 in attorney's fees and costs, and we affirm the award.

### B. Land–Magnolia's Obligation to Pay

As a final matter, Bodolosky argues the trial court erred in ordering Land–Magnolia be responsible for the award of attorney's fees and costs because Bodolosky, not Land–Magnolia, entered into the land sale contract with the Clardys. Bodolosky maintains there is no privity of contract because Land–Magnolia was not a party to Bodolosky's real estate contract with the Clardys. We agree.

"Generally, one not in privity of contract with another cannot maintain an action against him in breach of contract, and any damage resulting from the breach of a contract between the defendant and a third party is not, as such, recoverable by the plaintiff." *Windsor Green Owners Ass'n v. Allied Signal, Inc.*, 362 S.C. 12, 17, 605 S.E.2d 750, 752 (Ct.App.2004) (citing *Bob Hammond Constr. Co. v. Banks Constr. Co.*, 312 S.C. 422, 424, 440 S.E.2d 890, 891 (Ct.App.

1994)). However, with proof of a valid assignment of contract, an assignee can be bound to certain equities of the contract. *See Welling v. Crosland*, 129 S.C. 127, 137, 123 S.E. 776, 780 (1924) (internal citation omitted) ("The assignee of a contract is bound by the same equities which existed between the original parties to the contract, having purchased with a full knowledge of the state of things.").

Here, Land–Magnolia took title to the Motels; however, Bodolosky never assigned Land–Magnolia his real estate contract with the Clardys. Though Land–Magnolia was a necessary party to the present action, it was not a party to the real estate contract at issue. Consequently, Land–Magnolia cannot now be responsible for attorney's fees given there is no privity of contract. Rather, Bodolosky alone should incur attorney's fees and costs. Moreover, the trial court had the authority to award attorney's fees and costs based on the language of the Clardy contract, and Land–Magnolia did not have the benefit of participating in the negotiation of the contract at issue. Therefore, the trial court erred in finding Land–Magnolia was obligated to pay attorney's fees pursuant to Bodolosky's contract with the Clardys even though Land–Magnolia was an active participant in the events and decisions leading to the present action. Accordingly, the trial court's finding that Land–Magnolia is responsible for attorney's fees and costs is therefore reversed.

## CONCLUSION

We find the trial court did not err in ordering Bodolosky carry out the terms of his real estate contract with the Clardys and deliver title of real property to them. Additionally, we find there was a "meeting of the minds" between the parties to warrant enforcement of the contract. Finally, we believe the trial court properly awarded attorney's fees but find the trial court erred in holding Land–Magnolia responsible for any portion of attorney's fees and costs. The decision of the trial court is therefore

**AFFIRMED IN PART AND REVERSED IN PART.**

HEARN, C.J., and PIEPER, J., concur.