# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Peter Miller, Mary Alice Miller, Mary Alice Miller, as Trustee of Mary Alice Miller Living Trust, Miller Group Properties, LLC, and C-Miller Properties, LLC, Plaintiffs,

Of whom C-Miller Properties, LLC, is the Appellant.

v.

Marilyn L. Dillon and JLJ, LLC, Respondents,

and

Marilyn L. Dillon, Third-Party Plaintiff, Respondent,

v.

PMC, LLC, Third-Party Defendant.

Appellate Case No. 2018-000084

———————————

Appeal From Charleston County
Mikell R. Scarborough, Master-in-Equity

———————————

Opinion No. 5777
Submitted June 1, 2020 – Filed October 21, 2020

———————————

**AFFIRMED**

———————————

Beth B. Richardson and Jasmine Denise Smith, both of Robinson Gray Stepp & Laffitte, LLC, of Columbia, for Appellant.

Carmelo Barone Sammataro and Ian Douglas McVey, both of Turner Padget Graham & Laney, PA, of Columbia, for Respondents.

---

**KONDUROS, J.:** This appeal arises from a declaratory judgment action that resulted in a mediated settlement agreement between family members to resolve a dispute about the amount of debt on a loan. C-Miller Properties, LLC contends the master erred in denying its motion to enforce the settlement agreement. We affirm.

## FACTS/PROCEDURAL HISTORY

Peter Miller and Mary Alice Miller (Parents) have three daughters, Cynthia Miller, Petrease Clarkson, and Marilyn Dillon. Cynthia Miller is the sole owner of both C-Miller Properties, LLC and CRM Agency, LLC. Petrease Clarkson is the sole owner of PMC, LLC. Marilyn Dillon and her husband, Joe Dillon, together own JLJ, LLC.

Parents originally owned real property in the Hollywood/Ravenel area of Charleston County. When Parents faced financial challenges in 2006, daughter Marilyn, a resident of Maryland, loaned $360,000 to Parents, memorialized in a promissory note dated June 1, 2006. The note indicated Marilyn was the lender, and the borrowers were "Peter Miller, Mary Alice Miller, Mary Alice Miller as Trustee of Mary Alice Miller Living Trust, and Miller Group Properties, LLC." The terms of the note mandated the principal and interest were due to Marilyn three years later, on May 31, 2009. The borrowers did not meet this obligation.

Over time the family members entered into additional agreements. The Record indicates, on February 5, 2008, Miller Group Properties and C-Miller Properties LLC, executed a mortgage securing the 2006 note with Marilyn as the mortgagee. In 2012, Mary Alice Miller executed, on behalf of Miller Group Properties, a modified promissory note in the amount of $434,059 and a modified mortgage agreement. A warranty deed was also executed in 2012 in which Miller Group Properties transferred its remaining fifty percent interest in the property as follows: forty percent to JLJ, LLC—Marilyn and Joe Dillon's company—and ten percent to PMC, LLC—Petrease's company.

Ultimately, a dispute arose as to the amount of debt still owed to Marilyn. The family members disagreed whether certain conveyances of property were partial

payments on the outstanding loan and disagreed as to the balance due on the loan. On June 15, 2015, Parents, Miller Group Properties, and C-Miller Properties (collectively, Plaintiffs) brought a declaratory judgment action against Marilyn and JLJ, LLC (collectively, Defendants), alleging certain conveyances Plaintiffs made were partial satisfactions of the loan and should be credited to Plaintiffs, and seeking a determination of the remaining balance by the court.

Defendants answered, counterclaimed and cross-claimed against Plaintiffs, and made a third-party complaint against Petrease, asserting the total debt owed to Marilyn, secured by note and mortgage, for principal, interest, and late fees was $543,958.05.

The parties then entered into mediation, which resulted in a consensual settlement. The settlement agreement and subsequent order consisted of eighteen detailed terms, beginning with the following mandate:

> Within one hundred and eighty (180) days of the date of the filing of this Consent Order described below, [Plaintiffs] must provide [Defendants] with one of the following:
>
> a. A ratified contract to sell the property . . . for Eight Hundred Fifty Thousand [dollars] ($850,000.00) or higher; or
>
> b. An unqualified loan commitment letter from a reputable lender licensed by the state or federal government for a loan on commercially reasonable terms in an amount sufficient to pay the debt [owed] [to Marilyn and JLJ] . . . .

The settlement agreement expressly stated that if Plaintiffs failed to provide one of these two options to Marilyn by the deadline, Plaintiffs would be in default. "Failure to obtain a ratified contract or a loan commitment within one hundred eighty (180) days of the date of entry of this consent order shall be considered a default hereunder." Furthermore, the settlement agreement established Marilyn could record a deed to the property in lieu of foreclosure if Plaintiffs defaulted. "Said Deed in Lieu of Foreclosure will be held in trust by counsel for Defendants/Third-Party Plaintiff and will not be recorded unless Plaintiffs breach the terms hereof."

The agreement and subsequent order further detailed additional terms, including 1. specifying the ratified contract or loan commitment letter must be closed within 270 days from the date of the settlement agreement, 2. designating Reid Davis as the listing agent, 3. directing Plaintiffs to manage the property and to pay the expenses, property taxes, and insurance on the property until the sale or refinance closed, 4. and requiring Petrease, Marilyn, and JLJ, LLC to contribute specified funds to assist Plaintiffs in paying for the expenses, taxes, and insurance on the property.

All parties acknowledged Saturday, March 11, 2017, was the deadline to provide either the ratified contract or an unqualified loan commitment letter. On Wednesday, March 8, 2017, three days before the deadline, Cynthia sent a document entitled Real Estate Purchase Agreement to Marilyn offering to purchase the property for $850,000. However, Cynthia's signatures, as signatory for the proposed buyer, CRM Agency, LLC, and as one of the three sellers, C-Miller Properties, LLC, were the only signatures on the document. The signature lines for the two other sellers listed on the document, JLJ, LLC—Marilyn and Joe—and PMC, LLC—Petrease—were blank, as was a blank for "Seller's Spouse." The offer was not made with the involvement of the designated real estate agent and was contingent upon Cynthia obtaining financing "on or before June 2, 2017."

On Friday, March 10, 2017, via their counsel's correspondence, JLJ, LLC rejected Cynthia's offer, questioning Cynthia's financial ability to purchase the property, contending the property insurance had lapsed and the 2016 property taxes had not been paid, noting the settlement agreement required the use of Davis as the listing broker, and pointing out the offer did not include earnest money. The correspondence concluded: "That is simply unfair and a clear attempt to circumvent the terms and the intent of the Settlement Order."

The Record contains another signature page with Cynthia's signature as signatory authority for CRM Agency, LLC, as the buyer, and Cynthia, Petrease, and Parents, all signing as sellers on March 13, 2017. The signature lines for Marilyn, as one of the sellers, and Joe, as seller's spouse, were blank. Marilyn ultimately recorded the deed in lieu of foreclosure and then conveyed the property to another LLC.

On April 28, 2017, Plaintiffs filed a motion to enforce the settlement agreement, asking the master to require Marilyn and JLJ, LLC to "comply with the [settlement agreement] by executing the Real Estate Purchase Agreement . . . so that the Real Estate Purchase Agreement may proceed to closing." The master denied the

motion, finding Cynthia's offer did not comply with the settlement agreement, Plaintiffs were not entitled to enforce the agreement because they did not perform their required obligations pursuant to the agreement, and enforcing the agreement would prejudice Defendants.

Plaintiffs thereafter moved to amend the order under Rule 52(b), SCRCP, and to alter or amend the judgment under Rule 59(e), SCRCP, asserting the master erred in its findings.  A reconsideration hearing was held on December 18, 2017, and the master denied the motion.   This appeal followed.[1]

**STANDARD OF REVIEW**

"Our scope of review for a case heard by a Master-in-Equity who enters a final judgment is the same as that for review of a case heard by a circuit court without a jury."  *Tiger, Inc. v. Fisher Agro, Inc.*, 301 S.C. 229, 237, 391 S.E.2d 538, 543 (1989).

"Declaratory judgment actions are neither legal nor equitable and, therefore, the standard of review depends on the nature of the underlying issues." *Judy v. Martin*, 381 S.C. 455, 458, 674 S.E.2d 151, 153 (2009).  "Further, '[w]hen a suit involves both legal and equitable issues, each cause of action retains its own identity as legal or equitable for purposes of the applicable standard of review on appeal.'" *Lollis v. Dutton*, 421 S.C. 467, 477, 807 S.E.2d 723, 728 (Ct. App. 2017) (quoting *Holly Woods Ass'n of Residence Owners v. Hiller*, 392 S.C. 172, 180, 708 S.E.2d 787, 792 (Ct. App. 2011)).

"In South Carolina jurisprudence, settlement agreements are viewed as contracts." *Byrd v. Livingston*, 398 S.C. 237, 241, 727 S.E.2d 620, 621 (Ct. App. 2012) (quoting *Pee Dee Stores, Inc. v. Doyle*, 381 S.C. 234, 241, 672 S.E.2d 799, 802 (Ct. App. 2009)).  "An action to construe a contract is an action at law.  In an action at law, tried without a jury, the trial court's findings of fact will not be disturbed unless found to be without evidence which reasonably supports the court's findings."  *McGill v. Moore*, 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009) (citations omitted).

---

[1] We refer to C-Miller Properties, LLC, the appellant, and to CRM Agency, LLC, the buyer in Cynthia's offer, as "Cynthia" herein, at times, for ease.  We refer to Marilyn L. Dillon and JLJ, LLC, the respondents, as "Marilyn" herein, at times, for ease.

"This [c]ourt reviews all questions of law de novo." *Lollis*, 421 S.C. at 477, 807 S.E.2d at 728 (quoting *Fesmire v. Digh,* 385 S.C. 296, 302, 683 S.E.2d 803, 807 (Ct. App. 2009)).

"An action for specific performance is one in equity." *Campbell v. Carr*, 361 S.C. 258, 262, 603 S.E.2d 625, 627 (Ct. App. 2004).

> "On appeal from an action in equity, [the appellate court] may find facts in accordance with its view of the preponderance of the evidence." *Walker v. Brooks*, 414 S.C. 343, 347, 778 S.E.2d 477, 479 (2015). "However, this broad scope of review does not require this court to disregard the findings at trial or ignore the fact that the [circuit court] was in a better position to assess the credibility of the witnesses." *Laughon v. O'Braitis*, 360 S.C. 520, 524-25, 602 S.E.2d 108, 110 (Ct. App. 2004). Further, "this broad scope does not relieve the appellant of [the] burden to show that the trial court erred in its findings." *Ballard v. Roberson*, 399 S.C. 588, 593, 733 S.E.2d 107, 109 (2012).

*Lollis*, at 477-78, 807 S.E.2d at 728.

## LAW/ANALYSIS

### I.  Preservation

As an initial matter, Marilyn argues Cynthia makes arguments on appeal that are beyond the scope of the issues raised to the master, including asserting the master erred in considering affidavits admitted into evidence and in disfavoring undoing the filing of a deed in lieu of foreclosure.

> It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review. Moreover, an objection must be sufficiently specific to inform the trial court of the point being urged by the objector.

*Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (citation omitted).

"Error preservation requirements are intended 'to enable the lower court to rule properly after it has considered all relevant facts, law, and arguments.'" *Staubes v. City of Folly Beach*, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) (quoting *I'On, LLC v. Town of Mt. Pleasant*, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000)).

"A party need not use the exact name of a legal doctrine in order to preserve it, but it must be clear that the argument has been presented on that ground. A party may not argue one ground at trial and an alternate ground on appeal." *State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693-94 (2003) (citations omitted).

"An issue is deemed abandoned and will not be considered on appeal if the argument is raised in a brief but not supported by authority." *State v. Howard*, 384 S.C. 212, 217, 682 S.E.2d 42, 45 (Ct. App. 2009).

We find Cynthia's overarching issue on appeal, whether the master erred in denying her motion to enforce the settlement agreement, is preserved for appeal, and the majority of her arguments were raised to the master and addressed by the master. However, we find the record contains no evidence the master's use of the affidavits were objected to at the hearing. Rather, Cynthia raised this argument for the first time in the motion for reconsideration. Because this is an argument not specifically made at the trial, to the extent it is used to support her argument the master erred, we find this particular issue is not preserved on appeal.

We also find several arguments Cynthia raises on appeal abandoned because they are arguments made without reference to jurisprudence. Namely, Cynthia fails to cite precedent for her argument the master erred in denying her motion because the closing could have occurred by the second deadline in the settlement agreement. Nor does Cynthia provide precedent for two of her three arguments contending the master erred in "balancing the equities in favor of Marilyn." While Cynthia contends in her brief the master considered certain facts and not others, she does not provide this court with legal authority on which she relies. To the extent unsubstantiated arguments are used, we find these arguments are abandoned on appeal. We turn to the merits of the appeal.

## II. Enforcement of the Settlement Agreement

Cynthia contends the master erred in denying Plaintiffs' motion to enforce the settlement agreement, asserting three issues that sound in law. First, Cynthia contends the master erred in finding her offer was not a ratified contract because the only missing signature was that of Marilyn. Second, she contends the master erred in finding her offer failed to comply with the settlement agreement because it did not include earnest money. Finally, Cynthia argues the master erred in finding the offer violated the settlement agreement, asserting her offer could close by the second deadline set forth in the agreement. We disagree.

Cynthia provided a document to Marilyn before the deadline entitled Real Estate Purchase Agreement, establishing in the opening paragraph the agreement was between sellers, "C-Miller Properties[,] LLC, JLJ[,] LLC, [and] PMC[,]LLC," and [buyer], "CRM Agency[,] LLC." Signature lines for two of the three sellers were not executed and left blank in her offer. Cynthia expressly listed Petrease (PMC, LLC) and JLJ, LLC as owners; however, they did not sign the offer.

"The necessary elements of a contract are an offer, acceptance, and valuable consideration." *S. Glass & Plastics, Co. v. Kemper*, 399 S.C. 483, 491, 732 S.E.2d 205, 209 (Ct. App. 2012) (quoting *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 406, 581 S.E.2d 161, 166 (2003)).

*Black's Law Dictionary* defines "ratification" as:

> 1. Adoption or enactment, esp[ecially] where the act is the last in a series of necessary steps or consents. . . . 2. Confirmation and acceptance of a previous act, thereby making the act valid from the moment it was done . . . . 3. *Contracts.* A person's binding adoption of an act already completed but either not done in a way that originally produced a legal obligation or done by a third party having at the time no authority to act as the person's agent . . . .

*Black's Law Dictionary* (11th ed. 2019).

> "Where an agreement is clear on its face and unambiguous, the court's only function is to interpret its lawful meaning and the intent of the parties as found within the agreement." Where the contract language is plain and capable of legal construction, that language alone determines the instrument's force and effect.

*Stevens & Wilkinson of S. C., Inc. v. City of Columbia*, 409 S.C. 568, 577, 762 S.E.2d 696, 700 (2014) (citation omitted) (quoting *Miles v. Miles*, 393 S.C. 111, 117, 711 S.E.2d 880, 883 (2011)).

In *McGill v. Moore*, 381 S.C. 179, 672 S.E.2d 571 (2009), our supreme court provided guidance in a determination of whether an offer to purchase property constituted a contract. In that case the appellant asserted because eight of the nine owners signed the purchase agreement, the appellant had substantially complied with the agreement. *Id.* at 187, 672 S.E.2d at 575. Our supreme court stated:

> We hold that the master correctly found that the contracts contained a condition precedent that all owners sign the contract agreeing to sell their interests before any contract could be enforced. Reading all of the provisions as a whole, we find that the contract assumes that all owners would sell their interests in the property and that Appellant would subsequently be the sole owner of the property. . . .
>
> . . . .
>
> Had Appellant intended to purchase the interests of an individual owner without regard to the other owners' interest, he could have easily drafted a contract to reflect this intent. In our view, to construe the contract according to Appellant's interpretation would not be faithful to the entire document and would not reflect the parties' intentions. Accordingly, we hold that the contract contained a condition precedent which was not satisfied.

*Id.* at 186, 672 S.E.2d at 574-75 (citation omitted).

The opinion further explains:

> If a contract contains a condition precedent, that condition must either occur or it must be excused before a party's duty to perform arises. In this case, before the closing could occur, the contract required all of the owners to sign the contract. This condition has not been

met and has not been excused.  Therefore, we hold that Appellant may not circumvent the contract[']s condition precedent by arguing substantial compliance.

*Id.* at 187-88, 672 S.E.2d at 575.

We affirm the decision of the master that Cynthia did not comply with the settlement agreement.  The offer she made was not the required ratified contract, nor the loan commitment letter, by the deadline.  We find Cynthia's representation to the master during the hearing noteworthy as it acknowledges a discrepancy between what she was required to provide under the agreement and what she did provide.  Her counsel stated:

> Anticipating a little bit of what [counsel for Marilyn] is going to say, it took another day to get the signature of [Petrease] on the contract that [Cynthia] submitted.  It was a Saturday.  The deadline was a Saturday.  I told her, ["w]e need to get another signature.["]  It didn't come until Monday.  I know he was going to make an issue of that.  Your Honor, in substance they lived up to the term of the agreement.  We simply want an opportunity to try to purchase the property.  If it doesn't work then we're out of here and the Dillons have it, and that's the end of the case.

The offer made was not compliant with the mandate of the settlement agreement.  The agreement required a ratified contract or a loan commitment letter, by a date certain, not an "opportunity to try to purchase."

As this court noted in *Galloway v. Regis Corp.*, memorializing the terms of a settlement agreement is important so the parties have clarity.  325 S.C. 541, 546, 481 S.E.2d 714, 716-17 (Ct. App. 1997) ("We hope our decision here underscores the importance of putting a settlement agreement on the record or immediately reducing the agreement to writing, and including in the writing all material terms and conditions of the agreement.").  The parties here followed this directive and filed the consent settlement agreement as an order of the court.  Neither the parties, the master, nor this court may now disregard that order and its terms.   We find the master correctly found the offer Cynthia proposed did not comply with the settlement agreement and denied the motion.

We next address the argument Cynthia raises that the master erred in finding her offer to purchase did not comply with the settlement agreement in part because it failed to provide consideration in the form of earnest money. The master's ruling specifically stated: "The [c]ourt also finds the Real Estate Purchase Agreement is not supported by valuable consideration which is a necessary element of contract formation. . . . As a result, the Real Estate Purchase Agreement lacks consideration and does not comply with the terms of the Settlement Order."

While consideration is an element of contract formation, we do not find a requirement in the settlement agreement mandating earnest money must serve as that consideration. We note earnest money likely would have been a part of a ratified contract to purchase the property had the listing broker been used as required, but the settlement agreement did not address earnest money. Therefore, to the extent the master reasoned the failure to provide earnest money to Marilyn in the offer factored into the ruling Cynthia failed to comply with the settlement agreement as a matter of law, we do not believe the language of the agreement supports that reasoning. However, because the master's finding Cynthia's failure to provide a ratified contract by the deadline supports denial of her motion, any error regarding the issue of earnest money is harmless. In the words of Chief Judge Alex Sanders, "whatever doesn't make any difference, doesn't matter." *McCall v. Finley*, 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct. App. 1987).

We further find unpersuasive Cynthia's argument she complied with the settlement agreement because she contends the closing on her offer to purchase could occur by the second deadline set forth in the settlement agreement. We note the settlement agreement established two deadlines for action, but the second date comes into play only if the first date is met. The agreement mandated Plaintiffs must provide a ratified contract to sell the property within 180 days from the date of the filing of the order. The order subsequently required: "[i]f Plaintiffs obtain a ratified contract," the sale "must be closed" within 270 days "of the entry of this consent order." We find the master did not err in denying Cynthia's motion to enforce the settlement agreement because Cynthia's offer was not a ratified contract or a loan commitment letter, provided within 180 days, regardless of her contention she could close on her offer by the second deadline.

Cynthia's offer failed to comply with the terms of the settlement agreement. We are cognizant of the fact another family may have chosen to negotiate further after receiving the offer, but the settlement agreement expressly validates Marilyn's decision to file the deed in lieu of foreclosure. Accordingly, we affirm the decision of the master.

## III.      Specific Performance

The appropriate review called for in this appeal is based in law.  Because "settlement agreements are viewed as contracts," *Byrd*, 398 S.C. at 241, 727 S.E.2d at 621 (quoting *Pee Dee Stores, Inc., v. Doyle*, 381 S.C. 234, 241, 672 S.E.2d 799, 802 (Ct. Ap. 2009)), and because "[a]n action to construe a contract is an action at law," we affirm the decision of the master in finding the purchase offer did not comply with the requirements of the settlement agreement, and find evidence "reasonably supports the [master's] findings," *McGill*, 381 S.C. at 185, 672 S.E.2d at 574.  However, we also find no error in the master's findings that sound in equity, to wit: Plaintiffs could not compel enforcement of the settlement agreement because of Plaintiffs' own non-performance under the agreement, and enforcement of the settlement agreement would prejudice Defendants inequitably.

We recognize the motion made by Plaintiffs' seeking enforcement of the agreement could be considered, in essence, a motion to seek specific performance, requiring Marilyn to sell the property to Cynthia based upon the offer she made.  In *Standard Federal Sav. & Loan Ass'n v. Mungo*, 306 S.C. 22, 410 S.E.2d 18 (Ct. App. 1991), this court affirmed the decision of the master to consider that a motion for a rule to show cause was in substance a petition to amend the judgment.  This court found the rules of civil procedure work "to secure the just, speedy, and inexpensive determination of every action," and "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."  306 S.C. at 25, 26, 410 S.E.2d at 20 (quoting Rule 7(b), SCRCP).  This court found the master did not err in considering the motion for a rule to show cause as a motion to amend the judgment.

Cynthia argues on appeal the master erred in finding she was not entitled to specific performance because she satisfied all the elements for a specific performance award, and she contends the master erred in "balancing the equities" in favor of Marilyn.  We disagree.

Our supreme court has established defined requirements a court must find to order a party to specifically perform a contract.

> In order to compel specific performance, a court of equity must find: (1) there is clear evidence of a valid agreement; (2) the agreement had been partly carried into execution on one side with the approbation of the other;

and (3) the party who comes to compel performance has performed his or her part, or has been and remains able and willing to perform his or her part of the contract.

*Ingram v. Kasey's Assocs.*, 340 S.C. 98, 106, 531 S.E.2d 287, 291 (2000).

"In order to compel specific performance, a court of equity must find . . . that the party who comes to compel performance has performed on his part, or has been and remains able and willing to perform his part of the contract." *Shirey v. Bishop*, Op. No. 5718 (S.C. Ct. App. refiled Sept. 16, 2020) (Shearouse Adv. Sh. No. 36 at 20, 24) (quoting *Gibson v. Hrysikos*, 293 S.C. 8, 13-14, 358 S.E.2d 173, 176 (Ct. App. 1987)). "Equity will not decree specific performance unless the contract is fair, just, and equitable." *Campbell v. Carr*, 361 S.C. 258, 263, 603 S.E.2d 625, 627 (Ct. App. 2004). "The discretion to grant or refuse specific performance is a judicial discretion to be exercised in accordance with special rules of equity and with regard to the facts and circumstances of each case." *Id.* (quoting *Guignard v. Atkins*, 282 S.C. 61, 64, 317 S.E.2d 137, 140 (Ct. App. 1984)).

Our jurisprudence also supports the discretion of the court to consider all the facts and circumstances before it. "The rule is well settled that the granting of specific performance is not a matter of absolute right, but rests in the sound or judicial discretion of the [c]ourt, guided by established principles, and exercised on a consideration of all the circumstances of each particular case." *Bishop v. Tolbert*, 249 S.C. 289, 298, 153 S.E.2d 912, 917 (1967). In *Bishop*, our supreme court included reasoning from an 1871 opinion of the court:

> Among the established principles by which the court is guided and governed in the exercise of the sound discretion is that laid down in the early case of *Cureton v. Gilmore*, 3 S.C. 46:
>
> > []* * * He, therefore, who demands the execution of an agreement, ought to show that there has been no default in him in performing all that was to be done on his part; for, if either he will not, or through his own negligence cannot perform the whole on his side, he has no title in equity to the performance of the other party, since such performance could not be mutual. And, upon this reasoning, it is that where a man has trifled or

shown a backwardness in performing his part of
the contract, equity will not decree a specific
performance in his favor, * * *.[]

*Bishop*, 249 S.C. at 298, 153 S.E.2d at 917 (quoting *Cureton v. Gilmore*, 3 S.C. 46,
51 (1871)).

Cynthia did not perform her required obligations under the agreement, including
using Davis as the listing broker and paying the expenses due on the property, to
which her family members contributed.  The Record indicates Cynthia managed
the property for Parents and had access to needed information regarding the
property's leases and tenants, an important element of the sale.  However, the
affidavits of Joe Dillon and Reid Davis indicate Cynthia did not act in a manner
consistent with the requirement that Davis serve as listing agent.  While Cynthia
asserts she was not required to cooperate with Davis and did not prevent him from
listing the property, he was not part of the offer she made.  Rather, she made the
offer as sole owner of her own company.  Accordingly, we find no error in the
master's ruling.  As noted in *Ingram*, "[w]e rely on the equity maxim: 'He who
seeks equity must do equity.'"  340 S.C. at 107, 531 S.E.2d at 291 (quoting *Norton
v. Matthews*, 249 S.C. 71, 80, 152 S.E.2d 680, 684 (1967)).

Cynthia cites *Clardy v. Bodolosky*, 383 S.C. 418, 679 S.E.2d 527 (Ct. App. 2009),
in support of her argument she sufficiently complied with the settlement
agreement, as did the buyers in that case, and thus, she should be entitled to require
Marilyn to specifically perform the agreement.   We find the buyers' actions in
*Clardy* distinguishable from the facts here.  In *Clardy*, the seller argued on appeal
the trial court erred in finding the buyers entitled to specific performance because
the buyers wrote a check to the seller's attorney's trust account and not the seller,
even though there was no plan to put the funds in escrow.  *Id.* at 426, 679 S.E.2d at
531.  This court, however, affirmed the specific performance award to the buyers.
*Id.* at 428, 679 S.E.2d at 532.  The court provided:

> We find the [buyers] satisfied the elements of the *Ingram*
> test: there is evidence of a valid agreement, the [buyers]
> performed their part of the contract with [seller's]
> consent, and the [buyers] remain able and willing to buy
> the real estate.  Additionally, the [buyers] substantially
> performed their part of the contract and gave [seller]
> substantially all that he bargained for even if we assume
> the contract required the [buyers] write the earnest

money check directly to [seller] rather than to [the attorney's] trust account. Furthermore, the express provisions of the contract do not make strict compliance essential; therefore, substantial compliance is sufficient.

*Id.* at 427, 679 S.E2d at 531. Here, Cynthia likens her offer to purchase to the performance of the buyers in *Clardy*. We disagree. The buyers in *Clardy* fully performed and met their obligations under the agreement, with the only variance being they addressed the payment check to counsel for the seller, instead of the seller. Cynthia provided neither document the settlement agreement expressly required by the deadline; she failed to perform other obligations she was specifically required to perform under the settlement agreement; and she in essence acted as the broker, contrary to the agreement. Accordingly, we agree with the decision of the master to deny Cynthia's motion.

Finally, Cynthia asserts the master erred in balancing the equities between Plaintiffs and Marilyn. We find two of Cynthia's arguments abandoned. "An issue is deemed abandoned and will not be considered on appeal if the argument is raised in a brief but not supported by authority." *Howard*, 384 S.C. at 217, 682 S.E.2d at 45. To the extent she preserved her argument the master erred in finding the equities favored Marilyn filing the deed in lieu of foreclosure, we find no error in the master's decision denying Cynthia's motion. The master's order included evidence of the inequity of the outstanding loan, and noted:

> [T]he loan which was the subject of this matter matured in May 1, 2013 . . . It originated in June of 2006. Therefore, [Marilyn] has been without payment of her funds since at least May 1, 2013[,] and, according to the arguments at the hearing, long before that time. [Marilyn] bargained for foreclosure of the property if no payment was made. She then agreed to accept a Deed-in-Lieu of Foreclosure after giving the Plaintiffs adequate time to sell the property to a third party under the Settlement Order. No sale materialized despite her efforts, and[] she is entitled to the remedy provided: the recordation of the Deed-in-Lieu and title to the Property.

Accordingly, we find no error in the master's ruling.

**CONCLUSION**

We find the master did not err in denying the motion to enforce the settlement agreement.  Accordingly, the master's decision is

**AFFIRMED.**[2]

**WILLIAMS and HILL, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.